IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 15-cv-0467-WJM-KMT

MPVF LEXINGTON PARTNERS, LLC, a Delaware limited liability company, and
LEXINGTON DOWNTOWN HOTEL, LLC, a Delaware limited liability company,

    Plaintiffs,

v.

W/P/V/C, LLC, a Kentucky limited liability company,
VCI, INC. a Kentucky corporation,
PREMIUM FINANCIAL GROUP, LLC, a Delaware limited liability company,
VINE COMPANY, LLC, a Kentucky limited liability company,
MCV II, LLC, a Kentucky limited liability company,
THE WEBB COMPANIES, a Kentucky corporation,
R. DUDLEY WEBB, individually, and
D. WOODFORD WEBB, JR., individually,

    Defendants.

---

**ORDER DENYING MOTION TO TRANSFER**

---

Plaintiff MPVF Lexington Partners, LLC ("MPVF Partners") and Plaintiff Lexington Downtown Hotel, LLC ("Lexington Hotel") (collectively, "Plaintiffs") are Colorado-based entities with interests in property in Lexington, Kentucky. (ECF No. 5 ¶¶ 1–2, 12–23.) Claiming breach of a settlement agreement, Plaintiffs have sued several Kentucky-based entities and individuals: W/P/V/C, LLC; VCI, Inc.; Premium Financial Group, LLC ("Premium"); Vine Company, LLC ("Vine"); MCV II, LLC ("MCV II"); The Webb Companies; R. Dudley Webb; and D. Woodford Webb, Jr. (collectively, "Defendants").  Defendants ask this Court to transfer this case to the United States District Court for the Eastern District of Kentucky ("Transfer Motion"). (ECF No. 16.)

For the reasons stated below, the Transfer Motion is denied.

## I. FACTS

This case involves certain hotel, residential, and office real estate interests associated with a Hilton Hotel in downtown Lexington, Kentucky ("Hotel"). These interests are owned, or have been owned, in some form by both Plaintiffs and Defendants, although sometimes indirectly through a complicated network of what appear to be special- or single-purpose LLC entities. (ECF No. 1 ¶¶ 17–28; ECF No. 5 at 3–5, ¶¶ 12–23.) In any event, at one point, one or the other of the Plaintiffs (or its affiliate) and certain Defendants (or their affiliates) were members of one of these LLCs, known as MCV Venture, which is not a party here (and is not to be confused with Defendant MCV II). (*Id*. at 4, ¶ 16.)

The MCV Venture operating agreement led to a lawsuit in Kentucky state court in 2013. Specifically, Plaintiff MPVF Partners proposed to sell an office building connected to the Hotel, allegedly in violation of the operating agreement's right of first offer in favor of Defendant Premium. (*Id*. ¶¶ 15–16.) Premium therefore sued MPVF Partners, among others. (*Id*.) The parties settled that suit through the "February 2014 Settlement Agreement." (*Id*. ¶ 17.) Exactly what was settled is not clear, but it appears that Premium came out of the settlement under contract to buy the office building. (*See id*. at 19–35.)

In June 2014, MPVF Partners sold the Hotel to Plaintiff Lexington Downtown. (*Id*. at 5, ¶ 18.) Premium claimed that this also breached its right of first offer. (*Id*.) The following month, while Premium's latest first-offer dispute was still unfolding, Defendant

Vine delivered to MPVF Partners a notice of exercise of an option granted to Vine many years earlier. (*Id*. at 3, 5, ¶¶ 12–13, 20.) The option permitted Vine to purchase the "Air Lot," which is the air rights parcel associated with condominiums atop the Hotel. (*Id*. at 3, ¶¶ 12–13.) MPVF Partners rejected Vine's exercise of the option, claiming that the February 2014 Settlement Agreement had nullified the option. (*Id*. at 5, ¶ 20.)

In October 2014, various parties (including MPVF Partners and all Defendants) entered into another settlement, the "October 2014 Settlement Agreement." (*Id*. ¶ 21.) The October 2014 Settlement Agreement purported to resolve both Premium's dispute regarding MPVF Partners' sale of the Hotel and Vine's dispute regarding MPVF Partners' rejection of the Air Lot option. (*Id*.) Through the October 2014 Settlement Agreement, Vine acquired MPVF Partners' interest in the Air Lot via a quitclaim deed. (*Id*. ¶ 23.)

As will become significant later, the October 2014 Settlement Agreement contains a choice-of-forum clause ("Forum Selection Clause"), originally appearing in all capital letters but which the Court will reprint in this order with normal capitalization:

> The exclusive venue for any dispute or legal action arising from or concerning this agreement . . . and/or the quitclaim deed shall be the United States District Court for the District of Colorado or a Colorado state court sitting in Arapahoe County, Colorado. The parties irrevocably consent to personal jurisdiction of such courts.

(ECF No. 5-1 at 9.)

As with the February 2014 Settlement Agreement, the peace bought by the October 2014 Settlement Agreement did not last long. In December 2014, Vine sued Plaintiffs in Kentucky state court ("Kentucky Action"), alleging that Vine had just

3

discovered certain Hotel-related easements recorded by Plaintiffs during the negotiation of the October 2014 Settlement Agreement. (*Id*. at 35, ¶ 23.) Vine alleged that these easements "impose[] several onerous, costly and unnecessary burdens" (*id*. at 36, ¶ 26), and requested a declaratory judgment that they are unenforceable (*id*. at 41, ¶ 42).

Vine justified its choice to bring the lawsuit in Kentucky, rather than Colorado, by pointing to the portion of the October 2014 Settlement Agreement establishing that "'any easements, declarations, operating agreements or encumbrances of record . . . that benefit or burden the Hotel Land . . . and/or [the] Air Lot . . . and the obligations of the parties under this Agreement . . . [or] the Quitclaim Deed'" are excluded from the claims being settled by that Agreement ("Excluded Claims"). (*Id*. at 34–35, ¶ 21 (quoting *id*. at 5).) In other words, Vine took the position that an Excluded Claim falls entirely outside of the Settlement Agreement, including its Forum Selection Clause.

In January 2015, Plaintiffs (who are defendants in the Kentucky Action) filed a lawsuit in Colorado state court against Vine (the plaintiff in the Kentucky Action) and the other parties to the October 2014 Settlement Agreement. (*See generally* ECF No. 5.) Plaintiffs alleged that: (a) Vine had breached the October 2014 Settlement Agreement by filing the Kentucky Action; (b) MCV II had breached the October 2014 Settlement Agreement by demanding that Plaintiffs pay over certain rents collected prior to that Agreement from tenants of the office building; and (c) all Defendants had breached their obligation to indemnify Plaintiffs "against any and all loss, liability, claim or expense, including attorneys' fees, that [Plaintiffs] might incur as a result of the breach

of this [Settlement] Agreement." (*Id.* ¶¶ 34–42; ECF No. 5-1 at 7.) Plaintiffs also requested a declaration "that the Kentucky Action and [MCV II's] Rent Demand constitute breaches of the October 2014 Settlement Agreement for which the Defendants are obligated, jointly and severally, to indemnify [Plaintiffs]." (ECF No. 5 at 10, ¶ 45.) Defendants subsequently removed Plaintiffs' lawsuit to this Court. (ECF No. 1.)

## II.  ANALYSIS

### A.  The Applicability of the Forum Selection Clause

Defendants' Transfer Motion asks this Court to transfer this case to the Eastern District of Kentucky under 28 U.S.C. § 1404(a): "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[1] This provision normally requires the Court to weigh and balance numerous factors, including

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

---

[1] Originally, Defendants also sought dismissal for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1391. (ECF No. 16 at 9–10.) In their reply, however, Defendants explicitly abandon this argument. (ECF No. 24 at 1 n.1.)

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (internal quotation marks omitted).

However, the Supreme Court has recently held that the presence of a valid forum selection clause skews any § 1404(a) analysis heavily in favor of "the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion [lead to transfer away from the specified forum]." *Atl. Marine Const. Co. v. U.S. Dist. Court*, 134 S. Ct. 568, 581 (2013) (footnote omitted). Indeed, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id*.

In terms of weighing and balancing the factors normally considered,

> a court . . . should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.

*Id*. at 582. Thus, the only thing left to consider are public interest factors, which "may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id*. at 581 n.6 (internal quotation marks omitted; alteration in original).

As noted above, the October 2014 Settlement Agreement includes a Forum Selection Clause specifying Colorado as the "exclusive venue for any dispute or legal action arising from or concerning this Agreement . . . and/or the quitclaim deed." (ECF No. 5-1 at 9.) Defendants do not claim that this Clause is invalid, but they insist it does

not apply to this case. As they have argued in the Kentucky Action, they claim that the October 2014 Settlement Agreement's definition of "Excluded Claims" means that any claim within that definition falls entirely outside of the Settlement Agreement and its Forum Selection Clause. (ECF No. 16 at 13–14.)

The Court disagrees. To repeat, the Forum Selection Clause specifies an "exclusive" Colorado forum "for *any* dispute or legal action *arising from or concerning* this Agreement . . . and/or the quitclaim deed." (ECF No. 5-1 at 9 (emphasis added).) This lawsuit certainly fits within that extremely broad definition. Plaintiffs claim that the Kentucky Action violates the October 2014 Settlement Agreement. (ECF No. 5 at 10, ¶ 45.) That claim indisputably arises from or concerns the Settlement Agreement.

To be sure, Plaintiffs' claim is unusual. In the Court's experience, these sorts of second-filed lawsuits tend to be mirror images of the first-filed lawsuit, *e.g.*, if the first-filed suit is for breach of contract, the second-filed suit is for declaratory judgment of non-breach. Sometimes the second-filed suit seeks an injunction against the first-filed suit.[2] But that is not the kind of lawsuit that Plaintiffs have brought here. Plaintiffs do not seek declaratory judgment that they did nothing wrong with respect to the easements burdening the Hotel, or declaratory judgment that the easements are valid, and they do not seek an injunction against the Kentucky Action. Rather, they

---

[2] The Court emphasizes, however, that federal courts should not "stay or enjoin pending state court proceedings except under special circumstances." *Younger v. Harris*, 401 U.S. 37, 41 (1971); *see also* 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."). Moreover, "[p]arallel state-court proceedings do not detract from [a federal court's] obligation" to exercise jurisdiction where otherwise appropriate. *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013).

believe that the Kentucky Action, by its very existence, breaches the October 2014 Settlement Agreement, entitling Plaintiffs to indemnification and damages. (ECF No. 5 at 8–10, ¶¶ 34–45.) In practical terms, Plaintiffs have effectively asked this Court to rule that, regardless of the outcome of the Kentucky Action, Defendants must indemnify Plaintiffs for all costs, expenses, and fees flowing from the Kentucky Action.

On the merits, Plaintiffs may face difficulty justifying such a ruling, but the merits are not before the Court on this Motion.[3] Plaintiffs have certainly *asserted* what they believe to be a violation of the October 2014 Settlement Agreement. Such an allegation falls under the Forum Selection Clause.

Defendants are correct that the October 2014 Settlement Agreement specifically excludes (*i.e.*, does not resolve) claims based on "any easements, declarations, operating agreements or encumbrances of record . . . that benefit or burden the Hotel Land . . . and/or [the] Air Lot . . . and the obligations of the parties under this Agreement . . . [or] the Quitclaim Deed." (ECF No. 5-1 at 5.) However, Defendants cannot be correct that "[t]he excluded claims provision renders the October 2014 Settlement Agreement, and its venue selection clause, irrelevant." (ECF No. 24 at 4.) If that were true, then even lawsuits for breach of "the obligations of the parties under this Agreement" (an Excluded Claim) would be excluded from the Forum Selection Clause, effectively nullifying it.

The October 2014 Settlement Agreement is governed by Colorado law. (ECF No. 5-1 at 9.) In Colorado, a court must prefer "a construction of the contract that

---

[3] Plaintiffs have, however, filed an early motion for summary judgment. (ECF No. 14.) The Court will resolve that motion in due course.

8

harmonizes provisions instead of rendering them superfluous." *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 700 (Colo. 2009). A harmonious interpretation is certainly possible here because the Excluded Claims provision and the Forum Selection Clause address different topics. The Excluded Claims provision tells the parties that certain types of claims are not being released or settled. The Forum Selection Clause tells the parties that any dispute arising from or concerning the Settlement Agreement must be resolved in Colorado. Thus, to the extent an Excluded Claim arises from or concerns the Settlement Agreement, a party may properly bring a lawsuit based on the claim—but it must do so in Colorado.

The Court recognizes that the court in the Kentucky Action appears to have accepted Defendants' interpretation of the Excluded Claims provision and therefore denied a motion to dismiss for improper venue filed by Plaintiffs here (who are defendants in the Kentucky Action). (ECF No. 23-7 at 18–19.) The court reasoned that there was uncertainty "whether or not [that case turns] simply [on] an interpretation of . . . the settlement agreement." (*Id*. at 19.) Perhaps that is true with respect to the claims that Defendant Vine asserts in the Kentucky Action (although it would still seem to suggest that the dispute should be adjudicated in Colorado, since answering the question requires interpretation of the Settlement Agreement). Regardless, it is not true with respect to the claims that Plaintiffs assert here. Directly at issue in this lawsuit is whether Defendants breached the October 2014 Settlement Agreement by, among other things, filing the Kentucky Action. Whether or not Plaintiffs' theory of breach will gain any traction on its merits, it is not a mirror image of the Kentucky Action and it certainly arises from or concerns the October 2014 Settlement Agreement.

Thus, the Forum Selection Clause applies to this lawsuit and this Court may not analyze the private interests normally at stake when deciding a § 1404(a) transfer motion. *Atl. Marine*, 134 S. Ct. at 581–82. This Court may only look to public interest considerations, discussed next.

## B.    Public Interest Considerations

Public interest considerations "may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id*. at 581 n.6 (internal quotation marks omitted; alteration in original).

Concerning "a forum that is at home with the law," Defendants argue (based on their interpretation of the Excluded Claims) that the October 2014 Settlement Agreement's choice of Colorado law does not apply, and that Kentucky law will apply instead. (ECF No. 16 at 18.) On this, Defendants are simply incorrect. Again, as Plaintiffs have framed their causes of action, they relate directly to the meaning of the October 2014 Settlement Agreement. Resolving those causes of action will require construing the parties' rights and duties under the Agreement, and such construction must be done under Colorado law. (ECF No. 5-1 at 9.) Thus, the "forum that is at home with the law" is this forum.

With respect to "having localized controversies decided at home," Defendants are correct that this lawsuit ultimately stems from apparently long-running disputes regarding the Hotel in Kentucky. (ECF No. 16 at 18–19.) However, Plaintiffs have not established that a global resolution of all currently persisting disputes about the Hotel is somehow so important to the general citizenry of Kentucky that it should override the

parties' choice of a Colorado forum.

Finally, as to administrative difficulties and court congestion, Defendants point to statistics from the Administrative Office of the United State Courts showing that this District has a more congested docket than the Eastern District of Kentucky. (ECF No. 16 at 17–18.) In fact, when measured by average weighted filings per judge, this District is almost twice as busy. (*Id*.) This factor alone weighs in favor of transfer, but the Court cannot ignore the heavy thumb on the scale placed by the Forum Selection Clause: "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine*, 134 S. Ct. at 581. Although the statistical disparity is noteworthy, the Court does not deem it "exceptional" enough to override the parties' choice of forum.

In sum, the Court finds that the public interest considerations of a § 1404(a) transfer analysis do not counsel in favor of transfer, at least not strongly enough to overcome the Forum Selection Clause.[4]

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss or, in the

---

[4] Defendants raise the possibility of "inconsistent judgments and rulings between this Court and the Kentucky Court." (ECF No. 24 at 4.) Principles of claim and issue preclusion exist to resolve those problems, and regardless, transferring this lawsuit to the Eastern District of Kentucky would not eliminate the possibility of inconsistent judgments and rulings. There would still be two lawsuits: one in Kentucky state court and one in Kentucky federal court. Defendants' only real hope for avoiding the possibility of inconsistency would be to convince one court or the other to abstain from exercising jurisdiction or to stay the case. Defendants could have brought an abstention or stay motion in this Court, but they have not done so. Given that the orderly administration of justice would call for such a motion as part of (or simultaneously with) the Transfer Motion, the Court deems Defendants' failure to bring such a motion as a waiver of any abstention or stay argument based on the possibility of inconsistency with the Kentucky Action.

Alternative, to Transfer Case (ECF No. 16) is DENIED.

Dated this 4th day of June, 2015.

BY THE COURT:

William J. Martinez
United States District Judge