**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 15-cv-0467-WJM-KMT

MPVF LEXINGTON PARTNERS, LLC, a Delaware limited liability company, and
LEXINGTON DOWNTOWN HOTEL, LLC, a Delaware limited liability company,

      Plaintiffs,

v.

W/P/V/C, LLC, a Kentucky limited liability company,
VCI, INC. a Kentucky corporation,
PREMIUM FINANCIAL GROUP, LLC, a Delaware limited liability company,
VINE COMPANY, LLC, a Kentucky limited liability company,
MCV II, LLC, a Kentucky limited liability company,
THE WEBB COMPANIES, a Kentucky corporation,
R. DUDLEY WEBB, individually, and
D. WOODFORD WEBB, JR., individually,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff MPVF Lexington Partners, LLC ("MPVF Partners") and Plaintiff

Lexington Downtown Hotel, LLC ("Lexington Downtown") (collectively, "Plaintiffs") are

Colorado-based entities with interests in property in Lexington, Kentucky.  (ECF No. 5

¶¶ 1–2, 12–23.)  Claiming breach of a settlement agreement, Plaintiffs have sued

several Kentucky-based entities and individuals: W/P/V/C, LLC; VCI, Inc.; Premium

Financial Group, LLC ("Premium"); Vine Company, LLC ("Vine"); MCV II, LLC ("MCV

II"); The Webb Companies; R. Dudley Webb; and D. Woodford Webb, Jr. (collectively,

"Defendants").

Before the Court is Plaintiffs' Motion for Summary Judgment.  (ECF No. 14.)  For

the reasons explained below, the Court grants summary judgment against Defendant Vine solely on the question of whether Vine breached the parties' settlement agreement by filing a lawsuit in Kentucky.  Summary judgment is denied as to all other theories of liability and all other Defendants.  Furthermore, Plaintiffs' claims are dismissed for lack of Article III jurisdiction to the extent those claims rely on MCV II's demands for reimbursement of certain rents allegedly paid by mistake.[1]

## I.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence

---

[1] The undersigned allows the parties to file, "within thirty days after entry of the initial scheduling order[,] . . . one early motion for partial summary judgment . . . which presents a substantial and well-supported argument for significantly reducing the claims or issues in the case."  WJM Revised Practice Standard III.E.2.  Defendants interpret this to mean that the undersigned "do[es] not even allow an 'early motion for partial summary judgment' until at least 30 days after entry of the scheduling order," and complain that Plaintiffs acted too hastily because they filed the Motion before a scheduling order had been entered.  (ECF No. 23 at 17–18 (emphasis removed).)  Defendants are incorrect.  "Within thirty days after entry of the initial scheduling order" means that thirty days after entry of the scheduling order is the *latest* the undersigned will normally accept an early summary judgment motion.  It does not mean that a scheduling order must first enter before a party files an early summary judgment motion, and it certainly does not mean (as Defendants contend) that a party must wait "at least 30 days after entry of the scheduling order" to file such a motion.

and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

The following facts are undisputed unless otherwise noted.[2]

### A.     The Property[3]

This action revolves around a hotel, residential, retail, parking, and office complex in downtown Lexington, Kentucky, which the Court will refer to as the "Property."  (ECF No. 23 at 9, ¶ 2.)  The top five floors of the hotel building are actually a separate real estate interest from the hotel itself.  (*Id.* ¶ 1.)  The parties refer to this separate interest as the "Air Lot."  (*Id.*)  The Air Lot—*i.e.*, the top five floors—comprises privately owned condominiums.  (*Id.* ¶ 4.)

As the Court noted in a previous order, the various Plaintiffs and Defendants are

---

[2] Plaintiffs' counsel is admonished for failing to follow WJM Revised Practice Standard III.E.4, requiring the summary judgment movant to break its statement of material facts into discretely numbered paragraphs.  Plaintiffs' failure forced Defendants to address Plaintiffs' assertions of material fact sentence-by-sentence, which is much more cumbersome both for Defendants and this Court.

[3] All of the factual statements in this Part II.A derive from general background information included in Defendants' Statement of Additional Facts.  (*See* ECF No. 23 at 9–10.) Plaintiffs actually deny all of these assertions, claiming they are "without knowledge or information sufficient to form a belief as to the truth or falsity" of the assertion.  (ECF No. 25 at 2.)  Under the circumstances, this is not an appropriate objection.  Plaintiffs are (or were) investors in the Property.  It is simply beyond belief that Plaintiffs do not know enough to admit or deny such innocuous background assertions.

or have once been owners of various pieces of the Property, "although sometimes indirectly through a complicated network of what appear to be special- or single-purpose LLC entities."  (ECF No. 34 at 2.)

**B.     The Option Agreement**

As of 2008, Plaintiff MPVF Partners owned the Air Lot.  (ECF No. 14-1 § 1.)  In July of that year, MPVF Partners and Defendant Vine entered into the "Option Agreement" by which MPVF Partners granted Vine the "Air Rights Option."  (ECF No. 14 at 3.)  The Air Rights Option gave Vine the right, through July 31, 2014, to buy the Air Lot for one dollar.  (*Id.*; ECF No. 14-1 §§ 1–2.)  Assuming proper exercise of the Air Rights Option, the Option Agreement required MPVF Partners, "[o]n the Closing Date," to

> convey to [Vine] an unencumbered marketable fee simple title to the Air Lot by recordable quitclaim deed, free and clear of all liens and encumbrances except . . . easements and restrictions currently of record and easements and restrictions subsequently put to record which do not materially impact ownership or use of the Air Lot . . . .

(*Id.* § 5(b).)

**C.     The February 2012 Settlement Agreement**

Sometime in 2011 or early 2012, a wide-ranging dispute (one of many between and among these litigious entities) arose between Plaintiffs, Defendants, and various non-parties regarding their legal obligations toward each other and the Property.  (*See* ECF No. 49-5 at 2–4.)  This dispute spawned a lawsuit in the Eastern District of Kentucky and another in Kentucky state court.  (*Id.* at 1–2.)

In February 2012, the parties settled their differences through the "February

4

2012 Settlement Agreement." (*Id.* at 1.)  Through that agreement, MPVF Partners and others promised that "they have not placed or caused to be placed any other liens or encumbrances on [the Air Lot] and that they will not do so at any time in the future." (*Id.* § 5.)  This agreement also contained a Kentucky choice-of-law and choice-of-forum clause. (*Id.* § 25.)

**D.   The February 2014 Settlement Agreement**

In 2013, another dispute arose.  Defendants claim that "the MPVF entities" planned to sell the office portion of the Property in violation of a right of first offer in favor of Defendant Premium, an entity aligned with Vine.  (ECF No. 23 at 11, ¶¶ 15–20.)  Premium filed suit against MPVF Partners and others in Kentucky state court, seeking to enjoin the sale.  (ECF No. 14 at 4.)

In February 2014, the parties to that lawsuit entered into the February 2014 Settlement Agreement.  (ECF No. 14-2.)  Per that agreement, the office portion of the Property was conveyed to Defendant MCV II.  (ECF No. 14 at 4.)

**E.   The October 2014 Settlement Agreement**

The peace bought through the February 2014 Settlement Agreement only lasted a few months.  In June 2014, MPVF Partners sold the hotel portion of the Property to Plaintiff Lexington Downtown, and Premium objected that the sale violated another right of first offer.  (*Id.*)  Furthermore, in July 2014, Vine delivered a notice that it was exercising the Air Rights Option, but MPVF Partners rejected that notice, claiming that the February 2014 Settlement Agreement had released MPVF Partners from its obligations under the Option Agreement.  (*Id.* at 5.)

5

These disputes prompted the parties to begin negotiating yet another settlement agreement.  In late August 2014, while those negotiations were ongoing, MPVF Partners recorded what the parties call the "Easement Agreement."  (ECF No. 23 at 15, ¶ 44.)[4]  Vine claims that "[t]he Easement Agreement purported to alter several earlier easements and agreements of which Vine was aware, and [to] impose several onerous, costly and unnecessary burdens on Vine, as owner of the Air Lot [by virtue of exercising the Air Rights Option]."  (*Id.* ¶ 43.)

Vine claims that it knew nothing of the Easement Agreement when the parties finally executed their latest settlement agreement, the "October 2014 Settlement Agreement."  (*Id.* at 14, ¶ 41.)  That agreement settled—or at least attempted to settle —the parties' disputes over both the sale of the hotel portion of the Property and the continuing force of the Option Agreement.  (ECF No. 14-5.)

Concerning the Option Agreement, the October 2014 Settlement Agreement's recitals noted that "Vine purported to exercise the Air Rights Option" but "MPVF Partners rejected Vine's attempt to purchase the Air Rights Interests contending that the Air Rights Option was released pursuant to the [February 2014] Settlement Agreement."  (*Id.* at 1.)  Nonetheless, "[w]ithout admitting any wrongdoing or liability . . . the Parties desire[ed] to settle any disputes, claims or disagreements . . . with respect to . . . the Air Rights Option."  (*Id.*)  As part of the settlement, MPVF Partners agreed to (and did) convey the Air Lot to Vine via quitclaim deed.  (*Id.* § 2; ECF No. 14 at 5.)

---

[4] Plaintiffs purport to deny Defendants' allegation that they recorded the Easement Agreement in late August 2014.  (*See* ECF No. 25 at 3.)  Plaintiffs' denial, however, is a legal argument about the effect of the Easement Agreement, and therefore not a proper denial of Defendants' allegation that Plaintiffs in fact recorded the Easement Agreement.

Concerning the scope of the release, the agreement defined the "Claims" being settled as, among other things,

> any and all claims, debts, liabilities, offsets, demands, costs, expenses, reimbursements, indemnifications, actions or causes of action of every nature, character and description, without limitation in law, equity or otherwise, of any kind or character whatsoever, known or unknown, contingent or non-contingent, suspected or unsuspected, whether liquidated or unliquidated, whether arising in contract or tort, or at law, [or] in equity . . . including, but not limited to, all claims, actions, causes of action, and demands related to, or arising in connection with the Operating Agreement, the Option Agreement, the Air Rights Interests, the [February 2014] Settlement Agreement, the sale of the Office and/or the sale of the Hotel; provided, however, that [this definition of] Claims shall not include the Excluded Claims.

(ECF No. 14-5 § 1 (underscoring in original).)  Those "Excluded Claims" were defined, in relevant part, as "any easements, declarations, operating agreements or encumbrances of record in the Fayette County Clerk's Office that benefit or burden the Hotel Land, the Hotel, the Office Land, the Office and/or [the Air Lot], and . . . the obligations of the Parties under this Agreement, . . . [and] the Quitclaim Deed."  (*Id.*)

The October 2014 Settlement Agreement contained a Colorado choice-of-law clause (*id.* § 15), and also a Colorado choice-of-forum clause ("Forum Selection Clause"), originally appearing in all capital letters but which the Court will reprint with normal capitalization:

> The exclusive venue for any dispute or legal action arising from or concerning this agreement . . . and/or the Quitclaim Deed shall be the United States District Court for the District of Colorado or a Colorado state court sitting in Arapahoe County, Colorado.  The parties irrevocably consent to personal jurisdiction of such courts.

(*Id.* § 16.)[5]

## F.   The Rent Demand

Not surprisingly, additional disagreements surfaced quickly after the October 2014 Settlement Agreement.  Reaching back to the sale of the office (facilitated by the February 2014 Settlement Agreement), counsel for MCV II sent a letter to counsel for MPVF Partners on November 5, 2014, claiming that MCV II had been improperly charged and MPVF Partners had been improperly credited for about $27,000 in rents receivable at the closing of the office sale.  (ECF No. 14-8.)  MCV II threatened legal action if MPVF Partners did not refund that amount promptly ("Rent Demand").  (*Id.* at 2.)

On January 8, 2015, counsel for MCV II sent a follow-up letter regarding the Rent Demand.  (ECF No. 14-9.)  Counsel announced that the letter was MCV II's "final notice that unless such amount is paid in full . . . further steps by any and all means shall be taken to both collect the amount due and to hold MPVF and its appropriate representative or representatives personally responsible for their actions across the board."  (ECF No. 14-9 at 1.)

## G.   The Kentucky Action

The Rent Demand appears to be a fairly minor rumbling compared to the eruption that occurred when Vine discovered the Easement Agreement, allegedly sometime in the weeks after the October 2014 Settlement Agreement.  (ECF No. 23 at 15, ¶ 46.)  In response, Vine filed suit against MPVF Partners and Lexington Downtown

---

[5] From the notarized signature pages of the various agreements at issue in this lawsuit, it appears that MPVF Partners' principals reside in Colorado.

in Kentucky state court on December 31, 2014 ("Kentucky Action").  (ECF No. 14-7.)

Vine's original complaint ("Original Kentucky Complaint") recounted most of the parties' previous agreements and disputes, with special emphasis on, and long quotations from, the Option Agreement.  (*Id.* ¶¶ 8–19.)  Vine summarized the dispute over the Option Agreement that arose in July 2014 and stated that the parties "eventually reached a resolution of their differences, as memorialized in [the October 2014 Settlement Agreement].  As part of that resolution, and as provided by the Option Agreement, MPVF Partners executed a Quitclaim Deed in favor of Vine Company for the Air Lot."  (*Id.* ¶ 20.)  Vine noted, however, that the October 2014 Settlement Agreement's definition of "Excluded Claims" encompasses easements of record on the Air Lot, and therefore claims regarding such easements were "preserved and not released."  (*Id.* ¶ 21.)

Vine then went on to allege specifics regarding the Easement Agreement and its allegedly onerous burdens.  (*Id.* ¶¶ 23–31.)  Vine highlighted the Option Agreement's language requiring MPVF Partners to convey title to the Air Lot "free and clear of all liens and encumbrances except . . . easements and restrictions currently of record and easements and restrictions subsequently put to record which do not materially impact ownership or use."  (*Id.* ¶ 32 (quoting ECF No. 14-1 § 5(b)).)  Vine claimed that the Easement Agreement was "therefore contrary to the express terms of the Option Agreement."  (*Id.*)

Vine repeatedly accused MPVF Partners and Lexington Downtown of acting "in contravention of" or "in direct contravention of" the Option Agreement.  (*Id.* ¶¶ 35, 40,

47.)  Rather than suing for such "contravention," however, Vine asserted causes of action for: (1) declaratory judgment, seeking a declaration "that the Easement Agreement is unenforceable as to Vine Company or any subsequent purchaser of the Air Lot because it was entered into in violation of the Option Agreement" (*id.* ¶ 42); and (2) slander of title, claiming that the Option Agreement's prohibition of encumbrances such as those contained in the Easement Agreement render the Easement Agreement "a false statement about the status of Vine Company's title to the Air Lot" (*id.* ¶ 47).

## H.    Plaintiffs' Motion to Dismiss the Kentucky Action

Plaintiffs (who are defendants in the Kentucky Action) moved to dismiss the Kentucky Action on January 23, 2015.  (ECF No. 23-6.)  Plaintiffs' first argument for dismissal was improper venue, invoking the October 2014 Settlement Agreement's Forum Selection Clause, which specifies a Colorado forum.  (*Id.* at 10–11.)  Plaintiffs also made several failure-to-state-a-claim arguments.  (*Id.* at 11–19.)

The Kentucky court denied Plaintiffs' motion in full.  Concerning the Forum Selection Clause, the Kentucky court was persuaded by Vine's reference to the October 2014 Settlement Agreement's Excluded Claims provision and concluded, "the Court believes that there is at least some issue with respect to whether or not this is simply an interpretation of either the settlement agreement or the option agreement."  (ECF No. 23-7 at 19.)  In other words, it appears the Kentucky court believed that uncertainty regarding the necessity of interpreting the Option Agreement or October 2014 Settlement Agreement was sufficient to trump the Forum Selection Clause.

I.       **This Action & the Motion to Transfer**

The same day Plaintiffs filed their motion to dismiss the Kentucky Action, they

filed a lawsuit against Defendants in Arapahoe County District Court.  (ECF No. 1-1.)

Defendants removed to this Court claiming diversity jurisdiction.  (ECF No. 1.)

Defendants then filed a motion to transfer the case to the Eastern District of

Kentucky ("Transfer Motion").  (ECF No. 16.)  Defendants recognized that "Plaintiffs

filed this action, claiming that Vine breached [the October 2014 Settlement Agreement]

by, among other things, filing the Kentucky Action."  (*Id.* at 2.)  Defendants contended,

however, that the real purpose of this action is "to improperly shoe-horn the first-filed

Kentucky Action into a Colorado court."  (*Id.*)  Defendants argued, as they did in

response to the Kentucky Action motion to dismiss, that the October 2014 Settlement

Agreement's Excluded Claims provision took the Kentucky Action out of the Forum

Selection Clause, so it should have no weight in the transfer analysis.  (*Id.* at 12–14.)

Defendants further argued that the Eastern District of Kentucky would be a more

convenient, less expensive, and all-around better forum for everyone involved.  (*Id.* at

15–19.)  Defendants also feared "inconsistent judgments and rulings between this

Court and the Kentucky Court."  (ECF No. 24 at 4.)

This Court denied the Transfer Motion.  (ECF No. 34.)  The Court noted, as

Defendants themselves realize, that the crux of Plaintiffs' claims is that "the Kentucky

Action violates the October 2014 Settlement Agreement."  (*Id.* at 7.)  The Court deemed

that an "unusual" claim given that second-filed lawsuits are usually "mirror images of the

first-filed lawsuit, *e.g.*, if the first-filed suit is for breach of contract, the second-filed suit

is for declaratory judgment of non-breach.  Sometimes the second-filed suit seeks an injunction against the first-filed suit."  (*Id.*)  Here, however, "Plaintiffs do not seek declaratory judgment that they did nothing wrong with respect to the easements burdening the Hotel, or declaratory judgment that the easements are valid, and they do not seek an injunction against the Kentucky Action."  (*Id.*)  Plaintiffs' claim thus reduces to the theory that "the Kentucky Action, by its very existence, breaches the October 2014 Settlement Agreement, entitling Plaintiffs to indemnification and damages."  (*Id.* at 8.)  Such a claim, this Court held, falls within the Forum Selection Clause.  (*Id.* at 8–10.)  And, given the weight that a valid forum selection clause carries in any transfer analysis, the Court concluded that transfer to the Eastern District of Kentucky would be inappropriate.  (*Id.* at 10–11.)

**J.      Recent Developments in the Kentucky Action**

On July 21, 2015, Vine filed a second amended complaint in the Kentucky Action ("Second Amended Kentucky Complaint").  (ECF No. 49-4.)  The major difference between the Second Amended Kentucky Complaint and the Original Kentucky Complaint is the insertion of an additional theory of liability, *i.e.*, that the Easement Agreement violated not just the Option Agreement, but also the February 2012 Settlement Agreement.  As described above (Part II.C), the February 2012 Settlement Agreement appears to prohibit MPVF Partners from placing additional liens or encumbrances on the Air Lot, and it contains a Kentucky choice-of-law and choice-of-forum clause.

## III.  ANALYSIS

**A.      Have Defendants Breached the Forum Selection Clause?**

Plaintiffs' argument revolves around the scope of the October 2014 Settlement Agreement, which is governed by Colorado law.  (ECF No. 14-5 § 15.)  In Colorado, "[t]he interpretation of a settlement agreement, like that of any contract, is a question of law." *Montoya v. Connolly's Towing, Inc.*, 216 P.3d 98, 102 (Colo. Ct. App. 2008). "[I]ssues relating to the interpretation and enforcement of a forum selection clause" are likewise questions of law.  *Cagle v. Mathers Family Trust*, 295 P.3d 460, 464–65 (Colo. 2013).

The application of a forum selection clause is one of those questions that must necessarily be decided early in litigation (usually based on the applicable contract and relevant pleadings) or it is effectively nullified.[6]  Having thoroughly examined the parties' various agreements, the Original Kentucky Complaint, and the Second Amended Kentucky Complaint, the Court finds as a matter of law that Defendant Vine breached the Forum Selection Clause by filing the Kentucky Action.

1.      <u>Scope of the Forum Selection Clause</u>

The Forum Selection Clause covers "any dispute or legal action arising from or concerning this agreement . . . and/or the Quitclaim Deed."  (ECF No. 14-5 § 16.)  This is extremely broad language, particularly the word *concerning*, which is a synonym for

---

[6] Some states place the insurer's duty to defend in this category.  *See, e.g.*, *Buss v. Superior Court*, 939 P.2d 766, 775 (Cal. 1997) ("To defend meaningfully, the insurer must defend immediately.").  The defense of qualified immunity likewise falls in this category to ensure that civil officers are not unnecessarily burdened by litigation.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"relating to."  *See* Merriam-Webster Online, s.v. "concerning," *at* http://www.merriam-webster.com/dictionary/concerning (last visited Sept. 11, 2015).  Courts have routinely interpreted such language as "broader than the concept of a causal connection, and to mean simply connected by reason of an established or discoverable relation." *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 22 (1st Cir. 2011) (citing authorities).  Thus, if there is any "discoverable relation" between the October 2014 Settlement Agreement and the claims asserted in the Kentucky Action, the Forum Selection Clause requires such claims to be brought in Colorado.[7]

2.   The Original Kentucky Complaint

In this case, the "discoverable relation" is obvious.  The entire premise of the Original Kentucky Complaint is an alleged breach of a duty established in the Option Agreement to deliver title to the Air Lot "free and clear of all liens and encumbrances except . . . easements and restrictions currently of record and easements and restrictions subsequently put to record which do not materially impact ownership or use of the Air Lot."  (ECF No. 14-7 ¶ 16 (quoting ECF No. 14-1 § 5(b)) (underscoring added by Defendants).)  This indisputably "concerns" (relates to) the Option Agreement (the agreement establishing the above-quoted duty) as well as the Quitclaim Deed (the instrument that supposedly did not conform to the above-quoted duty).

This relation is further emphasized by the scope of the October 2014 Settlement Agreement's release: "all claims, actions, causes of action, and demands related to, or

---

[7] *Cf. Smith v. Multi-Fin. Sec. Corp.*, 171 P.3d 1267, 1270 (Colo. Ct. App. 2007) ("When an arbitration clause uses the phrase 'arising out of' or 'relating to,' it is broad in scope.  Any doubts regarding the scope of an arbitration clause must be resolved in favor of arbitration.").

arising in connection with," among other things, "the Option Agreement" and "the Air Rights Interests," including "known or unknown" and "suspected or unsuspected" claims, "whether arising in contract or tort, or at law, [or] in equity."  (ECF No. 14-5 § 1.) A claim asserting a breach of the Option Agreement or some sort of defect in the Air Lot caused by Plaintiffs certainly concerns the October 2014 Settlement Agreement, and is therefore covered by the Forum Selection Clause.

Vine, of course, has not brought a direct breach-of-contract claim.  The Original Kentucky Complaint seeks declaratory judgment and alleges slander of title.  (ECF No. 14-7 ¶¶ 37–49.)  But a "guiding principle for determination of the scope of a forum selection clause . . . is that courts will not tolerate 'artful pleading' of non-contract claims to avoid a forum selection clause."  *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 922 F. Supp. 1334, 1380 (N.D. Iowa 1996), *aff'd*, 119 F.3d 688 (8th Cir. 1997).  In this case, the claims for declaratory judgment and slander of title both allege "contravention of the Option Agreement" through Plaintiffs' recording of the Easement Agreement.  (ECF No. 14-7 ¶¶ 37–49.)  Under the circumstances, "contravention" can mean nothing but "breach," and Vine cannot avoid that implication through wordplay.  Vine's claims turn on proving that Plaintiffs did something the Option Agreement did not allow them to do, and that necessarily concerns October 2014 Settlement Agreement, which supposedly released all claims relating to the Option Agreement.  *See Huffington*, 637 F.3d at 22 (enforcing forum selection clause where plaintiff sued for misrepresentation, not breach of contract, but "the alleged misrepresentations at issue are actionable here, on [the plaintiff's] own theories of liability, only because they caused him to enter into an agreement whereby he made an unfavorable purchase.  In a nutshell, only if the

15

misrepresentations proximately caused the agreement and consequent acquisition was there a recoverable loss." (internal quotation marks omitted)).

An important corollary to the lack of tolerance for artful pleading is that a forum selection clause can apply even when the contract at issue is raised only as a defense to the plaintiff's claims.  Thus, even where a party "is not technically suing for breach of contract," the forum selection clause can still apply if "the entire controversy centers around which party's interpretation of the contract is the correct one."  *Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 116 (5th Cir. 1996).  That quite accurately describes this dispute.  Plaintiffs argue, with colorable support, that the October 2014 Settlement Agreement released them from claims such as those in the Kentucky Action.  (ECF No. 14 at 11–19.)  Vine contends the opposite.  (ECF No. 23 at 19–24.)  The correct interpretation of the October 2014 Settlement Agreement is therefore directly at issue.  *See also John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997) (holding that a "broadly worded" forum selection clause, "extending to any dispute 'arising . . . in relation to'" the contract, "easily encompasses a dispute in which the [contract] is raised as a defense").

### 3.    The Second Amended Kentucky Complaint

The Second Amended Kentucky Complaint does not materially change the analysis.  As relevant here, the only change worked by that complaint is the addition of a cause of action for breach of the February 2012 Settlement Agreement.[8]  The Court

---

[8] The Second Amended Kentucky Complaint actually contains many other new allegations, as well as causes of action for breaches of other agreements and for interference with business relations.  (*See* ECF No. 49-4 ¶¶ 82–116.)  Much of this new material stems from MPVF Partners' actions since the Kentucky Action was filed, such as allegedly interfering with

16

recognizes that MPVF Partners, through the February 2012 agreement, "warrant[ed] and represent[ed] that [it had] not placed or caused to be placed any other liens or encumbrances on [the Air Lot] and that [it would] not do so at any time in the future." (ECF No. 49-5 § 5.)  The Court further recognizes that the February 2012 agreement contains a Kentucky choice-of-law and choice-of-forum clause.  (*Id.* § 25.)  Finally, the Court notes that the February 2012 agreement "may not be altered or amended except by a written agreement signed by all of the Parties to such agreement."  (*Id.* § 28.)

The problem for Vine, however, remains the sweeping scope of the October 2014 Settlement Agreement and its Forum Selection Clause.  Again, that Clause encompasses any claim concerning the October 2014 Settlement Agreement.  Among the "concerns" of the October 2014 Settlement Agreement was the release of any sort of claim "related to, or arising in connection with . . . the Air Rights Interests."  (ECF No. 14-5 § 1.)  A claim for breach of the February 2012 Settlement Agreement due to supposedly unlawful encumbrances on the Air Lot certainly relates to "the Air Rights Interests."  Thus, at a minimum, resolving the claim for breach of the February 2012 Settlement Agreement will require resolving the effect of the October 2014 Settlement Agreement on the prior agreement, including, *e.g.*, whether the February 2012 agreement merged into the October 2014 agreement, whether the October 2014 agreement qualifies as a written-and-signed amendment to the February 2012

---

parking and elevator access for residents of the Air Lot condominiums.  (*Id.* ¶¶ 73–81.) Defendants, however, do *not* argue that these other allegations take the Kentucky Action out of the October 2014 Settlement Agreement's scope.  Defendants' argument regarding the Second Amended Kentucky Complaint centers solely on its additional claim for breach of the October 2012 Settlement Agreement.  (*See* ECF No. 49-3.)  Accordingly, the Court does not address the effect of allegations such as interfering with parking and elevator access.

agreement, and so forth.  All of these questions concern the October 2014 Settlement

Agreement and therefore must be raised in a Colorado forum.[9]

4.    "Excluded Claims"

Finally, Vine cannot rely on the October 2014 Settlement Agreement's definition

of "Excluded Claims" to avoid the Forum Selection Clause.  (*See* ECF No. 23 at 19–20.)

As this Court explained in its order denying the Transfer Motion, the Excluded Claims

provision and the Forum Selection Clause address different subjects.  (ECF No. 34

at 9.)  The Excluded Claims provision establishes that various claims were not released

by the October 2014 Settlement Agreement, including claims regarding "any easements

. . . or encumbrances or record . . . that benefit or burden . . . [the] Air Lot."  (ECF No.

14-5 § 1.)  Vine's claims in the Kentucky Action therefore at least arguably were not

released through the October 2014 Settlement Agreement.

But that does not mean that the Forum Selection Clause cannot apply.  In

Colorado, a court must prefer "a construction of the contract that harmonizes provisions

instead of rendering them superfluous."  *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208

P.3d 692, 700 (Colo. 2009).   Again, the Forum Selection Clause covers "any dispute or

legal action arising from or concerning" the October 2014 Settlement Agreement.  (*Id.*

§ 16.)  Vine's Kentucky Action asserts a breach of the Option Agreement, claims

regarding which were supposed to have been settled by the October 2014 Settlement

Agreement.  Indeed, Vine admits that "the provisions of the Option Agreement may be

---

[9] In any event, the Kentucky Action continues to fall within the Forum Selection Clause to the extent Vine continues to allege causes of action based on "contravention" of the Option Agreement.  Such a claim appears essentially indistinguishable from breach of the February 2012 Settlement Agreement.  Both claims turn on the legal effect of the Easement Agreement.

a factor" in determining the enforceability of the Easement Agreement.  (ECF No. 23 at 20.)  That determination concerns the October 2014 Settlement Agreement.  Thus, although the Excluded Claims provision may justify Vine's choice to file a lawsuit based on "contravention" of the Option Agreement through the Easement Agreement, the Forum Selection Clause requires Vine to file that lawsuit in Colorado.[10]

5.      Other Defendants

For the foregoing reasons, the Court holds as a matter of law that Vine breached the Forum Selection Clause.  This holding does not extend to any other Defendant. Vine is the only plaintiff in the Kentucky Action and Plaintiffs here have not explained how any other Defendant could be liable for Vine's choice to file that lawsuit in Kentucky.  Accordingly, this grant of summary judgment on liability runs against Vine only.

**B.      What Is the Remedy under Colorado Law for Breach of a Forum Selection Clause?**

Having found Vine liable for breach of the Forum Selection Clause, the Court must address a more difficult issue—the appropriate remedy.  Plaintiffs do not provide any help here.  In a half-page argument lacking any legal citations, Plaintiffs simply insist that they should collect their attorneys' fees and expenses incurred in the Kentucky Action and this action.  (ECF No. 14 at 19.)  The issue is much more

---

[10] To the extent Defendants mean to argue that the Excluded Claims provision shields any Excluded Claim from the Forum Selection Clause, Defendants' interpretation of the October 2014 Settlement Agreement cannot be correct.  Among the Excluded Claims is "the obligations of the Parties under this Agreement," meaning the October 2014 Settlement Agreement.  (ECF No. 14-5 § 1.)  If the Forum Selection Clause cannot apply to Excluded Claims, then it would not apply to *any* dispute concerning the October 2014 Settlement Agreement, rendering the Forum Selection Clause a nullity.

complicated.

The Court could not locate any case in which a court awarded damages for breach of a forum selection clause.  Rather, when a forum selection clause is at issue, courts generally enforce it by either: (1) dismissing the lawsuit, because the court agrees it should have been filed elsewhere, *see, e.g.*, *Edge Telecom, Inc. v. Sterling Bank*, 143 P.3d 1155, 1158 (Colo. Ct. App. 2006); or (2) enjoining the party in breach of the forum selection clause from pursuing a lawsuit elsewhere, *see, e.g.*, *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1365–66 (Fed. Cir. 2011); *Tex. Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1332 (Fed. Cir. 2000); *Rouse v. Tex. Capital Bank, N.A.*, 394 S.W.3d 1, 7–8 (Tex. App. 2011); *Babcock & Wilcox Co. v. Control Components, Inc.*, 614 N.Y.S.2d 678, 684 (Sup. Ct. 1993).

Here, remedy #1 is no longer available because the court in the Kentucky Action denied Plaintiffs' motion to dismiss that case based on the Forum Selection Clause.  As for remedy #2, Plaintiffs have not requested an injunction (*see* ECF No. 5 at 10–11), and an anti-suit injunction is probably unavailable in any event.  Although Plaintiffs may have been able to seek an injunction from the Colorado state court where they first filed this lawsuit, Defendants' removal to this Court eliminates that option because federal courts are subject to the Anti-Injunction Act: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  Various federal courts have held that the Anti-Injunction Act contains no exception for parties proceeding in state court in violation of

a forum selection clause.  *See Bank of Okla., N.A. v. Tharaldson Motels II, Inc.*, 743 F. Supp. 2d 1080, 1084 (D.N.D. 2010); *Bridgeport Machines, Inc. v. Alamo Iron Works, Inc.*, 76 F.  Supp. 2d 209, 213 (D. Conn. 1999); *Great Lakes Dredge & Dock Co., LLC v. Larrisquitu*, 2007 WL 2330187, at *3–8 (S.D. Tex. Aug. 15, 2007).  The Court agrees with these courts' analysis, especially in light of the Supreme Court's admonition that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy."  *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970).[11]

Thus, the question is whether a damages remedy is available to a party whose forum selection clause has been breached and who cannot obtain any of the traditional remedies for such a breach.  More precisely, because this Court's jurisdiction rests on 28 U.S.C. § 1332, the question is whether the Colorado Supreme Court would provide such a remedy.  *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d

---

[11] Theoretically, there may be a distinction between enjoining "proceedings in a State court" (arguably referring to an injunction against the state court itself) and enjoining the *parties* carrying on those proceedings.  Indeed, anti-suit injunctions probably most commonly take the form of an injunction against the parties because courts often do not have territorial jurisdiction to enforce an injunction against another court system (*e.g.*, the court system of a different state or country).  In the Anti-Injunction Act context, the Supreme Court has recognized a distinction between injunctions against a court and against a party in matters involving enforcement of state-court judgments.  *See Simon v. S. Ry. Co.*, 236 U.S. 115, 126 (1915); *Marshall v. Holmes*, 141 U.S. 589, 599–600 (1891).  But those decisions explicitly rest on the fact that state court proceedings have effectively ended.  *See Simon*, 236 U.S. at 124 ("when the litigation has ended and a final judgment has been obtained, and when the plaintiff endeavors to use such judgment, a new state of facts, not within the language of the [predecessor to the Anti-Injunction Act], may arise").  Moreover, if the Anti-Injunction Act could be avoided simply by enjoining parties rather than "proceedings," the exception would easily swallow the rule.  The Court therefore cannot issue an anti-suit injunction against the Kentucky Action simply by framing it as an injunction against Vine.

1086, 1093 (10th Cir. 2010) (when no state law is on point, "our task in diversity cases is to predict how the state supreme court would rule").  The Court could locate no Colorado authority on point.[12]  A damages remedy in this circumstance, furthermore, would appear to be a reversal of the traditional maxim that equitable remedies become an option when there is no adequate remedy at law.  *See Smith v. Executive Custom Homes, Inc.*, 230 P.3d 1186, 1192 (Colo. 2010) ("we do not resort to equity where there is a plain, speedy, adequate remedy at law" (internal quotation marks omitted)).  Indeed, a damages remedy here would be a remedy available because there was no adequate remedy *in equity*.

But forum selection clauses already inhabit such an upside-down world.  The default remedies for breach of a forum selection clause (a court dismissing the suit before it or enjoining the parties from litigating elsewhere) are essentially a form of specific performance.  In Colorado, specific performance supposedly requires no adequate remedy at law.  *See, e.g.*, *Bernhardt v. Hemphill*, 878 P.2d 107, 113 (Colo. Ct. App. 1994).  Yet this Court could locate no case, from Colorado or otherwise, analyzing the potential for a damages remedy before deciding whether to enforce a

--------

[12] Authority in other jurisdictions is meager.  With essentially no analysis, the following cases permit the remedy: *Allendale Mut. Ins. Co. v. Excess Ins. Co.*, 992 F. Supp. 278, 286 (S.D.N.Y. 1998); *Lab. Corp. of Am. Inc. v. Upstate Testing Lab., Inc.*, 967 F. Supp. 295, 299 (N.D. Ill. 1997); *Indosuez Int'l Fin., B.V. v. Nat'l Reserve Bank*, 758 N.Y.S.2d 308, 311 (App. Div. 2003).  Given the paucity of authority, the following cases deny the remedy: *Wells v. Entre Computer Centers, Inc.*, 915 F.2d 1566 (table), 1990 WL 146981, at *3 n.3 (4th Cir. Oct. 5, 1990); *RGC Int'l Investors, LDC v. Ari Network Servs., Inc.*, 2004 WL 189784, at *5 (D. Del. Jan. 22, 2004).  The Court expresses appreciation to commentator Daniel Tan for assembling this information.  *See* Daniel Tan, *Damages for Breach of Forum Selection Clauses, Principled Remedies, and Control of International Civil Litigation*, 40 Tex. Int'l L.J. 623, 633–35 (2005).

forum selection clause.[13]

Given this, the Court predicts that the Colorado Supreme Court would offer a damages remedy under the circumstances (*i.e.*, when the other lawsuit cannot be dismissed or enjoined).  To begin, Colorado courts are thus far unanimous in holding that forum selection clauses are presumptively enforceable.  *See Cagle*, 295 P.3d at 464–65.  More importantly, Colorado courts have long avoided holdings that would "deny [a contracting party] a remedy" and "in effect, abrogate an important element of the contract . . . , render it a nullity, and permit the [other party] to violate it with impunity." *Bleecker v. Colo. & S. Ry. Co.*, 114 P. 481, 483 (Colo. 1911).  If no damages remedy existed, then the Forum Selection Clause would become a nullity and all parties to the October 2014 Settlement Agreement could violate it with impunity so long as they could convince some non-Colorado court not to dismiss an improperly filed lawsuit. The Court predicts that the Colorado Supreme Court would not endorse this possibility, given that it would cast doubt on the enforceability of every Colorado forum selection clause, now and in the future.

The next question is the appropriate measure of damages.  "In a breach of contract action, the measure of damages is the amount it takes to place the plaintiff in the position it would have occupied had the breach not occurred." *Acoustic Mktg. Research, Inc. v. Technics, LLC*, 198 P.3d 96, 98 (Colo. 2008).  Accordingly, in an

---

[13] *Cf.* Nicholas S. Shantar, Note, *Forum Selection Clauses: Damages in Lieu of Dismissal?*, 82 B.U. L. Rev. 1063, 1066 (2002) ("Oddly, courts and legal scholars have not provided any justification as to why specific enforcement, the most extreme type of enforcement, is the appropriate remedy when a party files suit in breach of [a forum selection clause].").

action for breach of a forum selection clause, the baseline from which damages should be judged is the hypothetical scenario in which the breaching party had filed its lawsuit in the proper forum.  In this case, then, the baseline from which damages should be measured is the hypothetical scenario in which Vine filed the Kentucky Action in this Court or Arapahoe County District Court.  Plaintiffs' damages would then comprise the fees and expenses incurred above what Plaintiffs would have incurred anyway had the Kentucky Action been filed here from the outset.  Importantly, such damages, if any, will continue to accrue as long as Vine continues to pursue the Kentucky Action in Kentucky.

The Court further notes the fee-shifting clause in the October 2014 Settlement Agreement: "[T]he prevailing Party in any proceeding relating to enforcement of this Agreement shall be awarded its costs and reasonable attorney fees."  (ECF No. 14-5 § 23.)  Conceivably, this clause could award certain amounts that would otherwise be claimed as damages.  At this time, however, the Court need not resolve the distinction between a damages award encompassing attorneys' fees and a post-judgment award of fees under the fee-shifting clause.  The Court leaves this matter to the parties to present their respective positions at the appropriate time.

## C.    Matters this Order Does Not Decide

Plaintiffs ask this Court not only to find a breach of the Forum Selection Clause, but also to hold that the October 2014 Settlement Agreement entirely extinguished the claims asserted in the Kentucky Action.  (ECF No. 14 at 13–18.)  In other words, Plaintiffs do not simply want a finding that the Kentucky Action concerns the October 2014 Settlement Agreement and should therefore have been filed here.  Plaintiffs want

24

the Court to declare that the Kentucky Action is an attempt to resurrect settled claims and therefore a total repudiation and breach of the October 2014 Settlement Agreement.

The Court is not convinced on this record (developed without discovery) that the Kentucky Action is, as a matter of law, a repudiation of the October 2014 Settlement Agreement.  On the record as currently presented, the Court sees a genuine factual dispute over whether Vine already released the claims it is litigating in Kentucky, as well as a dispute regarding the underlying merits.  Thus, although Vine certainly should have brought its claims in Colorado, the Court cannot yet grant summary judgment either way on the substance of those claims.

**D.     The Rent Demand**

Lastly, the Court must consider MCV II's Rent Demand.  (*See* Part II.F, *supra*.) The Rent Demand appears to be no more than a footnote in the parties' larger dispute, but Plaintiffs insist it is also a breach of the October 2014 Settlement Agreement because that agreement supposedly extinguished all pre-existing, non-Excluded claims, and the Rent Demand is a pre-existing, non-Excluded claim.  (*See* ECF No. 14 at 19–20.)

The Court finds, *sua sponte*, that it lacks Article III jurisdiction over the Rent Demand dispute.  Article III jurisdiction depends on, among other things, an "actual or imminent" injury to "a legally protected interest."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The record before the Court contains no indication of such an injury.  MCV II sent one threatening letter in November 2014 and another in January

25

2015.  It has since done nothing.  The Rent Demand is not part of the Original Kentucky Complaint or the Second Amended Kentucky Complaint, nor has MCV II asserted a counterclaim in this lawsuit for the allegedly wrongfully paid rent.  (*See* ECF No. 47.) Plaintiffs have therefore failed to demonstrate an actual or imminent injury based on the Rent Demand.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  Plaintiffs' Motion for Summary Judgment (ECF No. 14) is GRANTED as against Defendant Vine Company, LLC, for failure to file the Kentucky Action in Colorado, and DENIED in all other respects;

2.  All of Plaintiffs' causes of action, to the extent they rely on the Rent Demand, are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction;

3.  The stay of discovery entered by the Magistrate Judge (ECF No. 48) is LIFTED; and

4.  As ordered by the Magistrate Judge (ECF No. 48), the parties have ten days to file a joint status report with the Magistrate Judge.

Dated this 16th day of September, 2015.

BY THE COURT:

_____
William J. Martínez
United States District Judge